IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **LISA MARIE MCGRAW** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. WGC-10-3465** |
| ) | |
| **MICHAEL ASTRUE** ) | |
| **Commissioner of Social Security** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Lisa Marie McGraw ("Ms. McGraw" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-433, 1381-1383f.  The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition.  *See* ECF Nos. 6, 8-9.[1]  Pending and ready for resolution are Plaintiff's Motion for Summary Judgment (ECF No. 14) and Defendant's Motion for Summary Judgment (ECF No. 19).  Plaintiff filed a Response to Defendant's Motion.  *See* ECF No. 20.  No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.

---

[1] The case was subsequently reassigned to the undersigned.

1. **BACKGROUND**

On May 22, 2008 Ms. McGraw filed applications for DIB[2] and SSI alleging a disability onset date of April 1, 2008 due to Bipolar Disorder.  *See* R. at 139-42, 143-44, 145-46, 164.  Ms. McGraw's applications were denied initially on October 3, 2008.  R. at 72-75, 76-79.  On November 24, 2008 Ms. McGraw requested reconsideration, R. at 82, and on March 20, 2009 the applications were denied again.  R. at 83-84, 85-86.  Thereafter, on March 26, 2009, Ms. McGraw requested a hearing before an Administrative Law Judge ("ALJ").  R. at 87-89.  On January 14, 2010 an ALJ convened a hearing.  R. at 23-67.  Ms. McGraw was represented by a non-attorney at this hearing.  The ALJ obtained testimony from Ms. McGraw and a vocational expert ("VE").  In the January 21, 2010 decision the ALJ found Ms. McGraw is not disabled within the meaning of the Act.  R. at 18.  Ms. McGraw thereafter requested a review of the hearing decision.  R. at 134-38.  On October 12, 2010 the Appeals Council denied Ms. McGraw's request for review, R. at 1-3, thus making the ALJ's determination the Commissioner's final decision.

2. **ALJ's Decision**.

The ALJ evaluated Ms. McGraw's claims for DIB and SSI using the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920.  Ms. McGraw bears the burden of demonstrating her disability as to the first four steps.  At step five the burden shifts to the Commissioner.  If Ms. McGraw's claims fail at any step of the process, the ALJ does not advance to the subsequent steps.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  At step one the ALJ found Ms. McGraw has not engaged in substantial gainful activity since April 1, 2008, the

---

[2] Ms. McGraw "has acquired sufficient quarters of coverage to remain insured through September 30, 2008."  R. at 9.  *See also* R. at 155, 158, 160.

alleged onset date of disability.  R. at 11.  The ALJ concluded at step two that Ms. McGraw's depression, anxiety, Noonan syndrome[3] resulting in a learning disorder, bereavement disorder and personality disorder are severe impairments.  *Id.*  The ALJ further found at step two that Ms. McGraw's back pain, headaches and seizures are non-severe impairments.  *Id.*  In the decision the ALJ explained in detail why he found these conditions non-severe.[4]  *See id.* at 11-12.

At step three the ALJ determined Ms. McGraw does not have an impairment or combination of impairments that meets or medically equals the criteria of any of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ specifically considered Listings 12.04 (*Affective Disorders*), 12.08 (*Personality Disorders*) and 12.09 (*Substance Addiction Disorders*).  The ALJ began his analysis by considering whether the "paragraph B" criteria of these impairments have been satisfied.

To satisfy the "paragraph B" criteria Ms. McGraw must demonstrate at least two of the following:  *marked* restriction of activities of daily living, *marked* difficulties in maintaining social functioning, *marked* difficulties in maintaining concentration, persistence or pace, or *repeated* episodes of decompensation, each of extended duration.  In reviewing the evidence of record including Ms. McGraw's testimony, the ALJ found Ms. McGraw has a *mild* restriction of activities of daily living.  "The claimant lives with her mother and her son . . . She is able to care

---

[3]  "Noonan syndrome is a disease passed down through families (inherited) that causes abnormal development in many parts of the body.   It used to be called Turner-like syndrome."   *PubMed Health,* http://www.ncb.nlm.nih.gov/pubmedhealth/PM0002621 (last visited December 19, 2011).

[4]  "Plaintiff does not dispute the ALJ's determination that her back pain (resulting from a fractured vertebrae injury), headaches, and seizure disorder are not 'severe impairments' within the meaning of the Social Security regulations."  Pl.'s Mem. Supp. Mot. Summ. J. at 4 n.4 (citation omitted).

for her son.  She is able to care for her personal needs and performs her activities of daily living independently."  R. at 13.

Regarding social functioning, the ALJ found Ms. McGraw has *mild* difficulties.  "Though the State agency psychological consultants opined that the claimant has moderate difficulties with social functioning, the claimant's testimony at the hearing clearly supports only a mild restriction."  *Id.*  The ALJ found Ms. McGraw has *moderate* difficulties with concentration, persistence or pace.  "The claimant testified she has a learning disability that makes it difficult for her to read, but she can read instructions and the newspaper, though at a slower pace . . . The claimant had an average fund of information, but somewhat limited vocabulary . . .The claimant's performance during the psychological consultative examination, along with her testimony that she was demoted from salesperson to stock person based on difficulty using a cash register, is consistent with moderate difficulty in concentration, persistence or pace."  *Id.* Finally, concerning episodes of decompensation, the ALJ found Ms. McGraw experienced *one* episode, not of an extended duration.  Because Ms. McGraw's mental impairments do not at least cause two marked limitations or one marked limitation and repeated episodes of decompensation, the "paragraph B" criteria have not been satisfied.  *Id.* at 14.

Next the ALJ considered whether the "paragraph C" criteria have been met.  He found those criteria unsatisfied for the following reasons.

> [T]he evidence fails to establish the presence of the "paragraph C" criteria . . .  no repeated episodes of decompensation, each of extended duration have been established in the records.  No allegation has been made, nor evidence shown, that even a minimal increase in mental demands or change in the environment would be predicted to cause decompensation. There is no evidence in the record to suggest that the claimant

> has a current history of at least one year['s] inability to function
> outside a highly supportive living arrangement.

R. at 14.

The ALJ then proceeded to determine Ms. McGraw's residual functional capacity ("RFC"). The ALJ found Ms. McGraw can perform medium work as defined in the Regulations except "she should avoid hazards such as dangerous machinery and unprotected heights; she should never climb ladders, ropes, and scaffolds; she is limited to jobs that involve simple, routine, and repetitive tasks, involving only simple, work-related decisions, with few if any work place changes." *Id.* At step four the ALJ found Ms. McGraw is capable of performing her past relevant work as a stockperson at a department store, both as Ms. McGraw described her duties and as the position is generally performed. R. at 16.

In the alternative, at step five, the ALJ considered Ms. McGraw's age (26 years old on the alleged date of disability — defined as a younger individual age 18-49), education (high school), past work experience (transferability of job skills is not material) and her RFC (medium work with limitations). The ALJ found the Social Security Administration met its burden of proving Ms. McGraw is capable of performing other work[5] that exists in significant numbers in the national economy, relying on the testimony of the VE. R. at 17, 55-56. Accordingly, the ALJ concluded that Ms. McGraw is not disabled within the meaning of the Act. R. at 18.

3. **Standard of Review**.

The role of this Court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453,

---

[5] Dietary aide and hand packer.

1456 (4th Cir. 1990).   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).   It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury.   *Hays*, 907 F.2d at 1456.   This Court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence.   *Id.*

4. **Discussion**.

A.      *Failure to Find Bipolar Disorder a Severe Impairment*

Plaintiff asserts the ALJ committed prejudicial error by failing to find Ms. McGraw's Bipolar Disorder a severe impairment at step two.   "[T]here was no consideration of Ms. McGraw's impairment of bipolar disorder, which, despite the repeated diagnosis, was ignored even in the issue of whether it is a 'severe impairment'[.]"   Pl.'s Mem. Supp. Mot. Summ. J. at 19.

A review of the record shows Ms. McGraw was first diagnosed with Bipolar II Disorder, 296.89 upon her discharge from Sheppard Pratt Health System on April 2, 2008.   R. at 220. When Ms. McGraw was discharged, she was advised to seek outpatient therapy.   On May 5, 2008 Ms. McGraw saw Dr. Alisa Devlin, Franklin Square Hospital Center, who diagnosed Bipolar I Disorder Mixed Mood 296.62.   R. at 379.   On September 9, 2008 Ms. McGraw was admitted to Good Samaritan Hospital after seizure like symptoms.   Upon discharge on September 10, 2008, the diagnosis included Bipolar I Disorder depressed.   R. at 345.   The following day, September

11, 2008, Ms. McGraw was seen by Dr. Kripa S. Kashyap for a consultative psychiatric evaluation.   Dr. Kashyap diagnosed, among other things, Bipolar II Disorder, most recent episode Depressed (296.89).   R. at 354.   And on September 12, 2008 Ms. McGraw began treatment with Dr. Elias K. Shaya and Kandy Aboud, MSN, CRNP.   During this initial session, Ms. Aboud diagnosed, among other things, Bipolar I Disorder current episode depressed.   R. at 457. The Bipolar Disorder diagnosis remained consistent throughout Ms. McGraw's treatment with Dr. Shaya and Ms. Aboud from September 2008 through December 2009, *see* R. at 426, 430, 433, 435, 437, 439, 441, 443, 446, 455, except on two occasions (December 1, 2008 and February 9, 2009), Ms. McGraw was diagnosed as Bipolar Disorder, Depressed, *see* R. at 448, 452, and on January 12, 2009 Ms. McGraw was diagnosed as Bipolar Disorder, Mixed, *see* R. at 450.

Plaintiff is correct that the ALJ failed to specifically identify Bipolar Disorder as a severe impairment at step two.   *See* R. at 11.   But, as the Commissioner notes, the ALJ did not ignore or reject this diagnosis.   "Though I reject Ms. Aboud's assessment of the claimant's limitations as being marked, I do accept the diagnoses of Bipolar disorder and anxiety disorder.   I additionally accept that they are characterized by anhedonia, sleep disturbance, decreased energy, feelings of guilt/worthlessness, difficulty concentrating/thinking, pressure of speech and easy distractibility."   R. at 15 (footnote omitted).   In the portion of the decision concerning Ms. McGraw's residual functional capacity, the ALJ noted two other medical sources diagnosed Bipolar Disorder.   *See id.* at 15-16.

Listing 12.04, *Affective Disorders*, is "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.   Mood refers to a prolonged

emotion that colors the whole psychic life; it generally involves either depression or elation."

20 C.F.R. Pt. 404, Subpt. P, App. I § 12.04 (2009).   To meet this listing a claimant must

demonstrate that she satisfies the criteria of <u>both</u> A and B <u>or</u> that the C criteria are satisfied.

The paragraph A criteria for Listing 12.04 are:

> A.    Medically documented persistence, either continuous or intermittent, of one of the following:

> 1.    Depressive syndrome characterized by at least four of the following:

>> a.  Anhedonia or pervasive loss of interest in almost all activities; or
>> b.  Appetite disturbance with change in weight; or
>> c.  Sleep disturbance; or
>> d.  Psychomotor agitation or retardation; or
>> e.  Decreased energy; or
>> f.  Feelings of guilt or worthlessness; or
>> g.  Difficulty concentrating or thinking; or
>> h.  Thoughts of suicide; or
>> i.  Hallucinations, delusions, or paranoid thinking; or

> 2.    Manic syndrome characterized by at least three of the following:

>> a.  Hyperactivity; or
>> b.  Pressure of speech; or
>> c.  Flight of ideas; or
>> d.  Inflated self-esteem; or
>> e.  Decreased need for sleep; or
>> f.  Easy distractability; or
>> g.  Involvement in activities that have a high probability of painful consequences which are not recognized; or
>> h.  Hallucinations, delusions or paranoid thinking; or

> 3.  Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)[.]

*Id.* § 12.04(A).

Although the ALJ did not include Bipolar Disorder among Ms. McGraw's severe impairments at step two, the ALJ found depression as a severe impairment at step two.  As evident by the record and noted *supra*, Ms. McGraw's Bipolar Disorder manifested more characteristics of depressive syndrome versus manic syndrome, based on her medical sources' diagnoses.  Further, in the decision, the ALJ not only accepted the diagnosis of Bipolar Disorder and anxiety disorder as assessed by Ms. Aboud, but the ALJ also acknowledged Ms. McGraw satisfied at least *five* of the criteria for Listing 12.04(A)(1) by finding Ms. McGraw's Bipolar Disorder and anxiety disorder "are characterized by anhedonia, sleep disturbance, decreased energy, feelings of guilt/worthlessness [and] difficulty concentrating/thinking[.]"  R. at 15.  Ms. McGraw fails to demonstrate prejudicial error by the exclusion of Bipolar Disorder at step two, in light of the ALJ's consideration of the restrictions attributable to Bipolar Disorder in the decision.

Regarding Plaintiff's contention that her Bipolar Disorder meets Listing 12.04, she has the burden of proving this impairment satisfies the criteria of <u>both</u> paragraphs A and B <u>or</u> the criteria of paragraph C.  In the decision the ALJ explained in detail why Ms. McGraw fails to satisfy the paragraph C criteria of "1. [r]epeated episodes of decompensation, each of extended duration; or 2. [a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate; or 3. [c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such arrangement."   20 C.F.R. Pt. 404, Subpt. P, App. I § 12.04(C) (2009); *see* R. at 14.  Plaintiff fails to present any evidence satisfying the paragraph C criteria.

Plaintiff thus must satisfy <u>both</u> paragraphs A and B of Listing 12.04 to meet the listing. The ALJ acknowledged the paragraph A criteria have been demonstrated.  R. at 15.  The ALJ however found Ms. McGraw failed to satisfy the paragraph B criteria of at least *two* marked limitations <u>or</u> *one* marked limitation and *repeated* episodes of decompensation.  *Id.* at 14.

At the initial and reconsideration levels of Ms. McGraw's applications, a psychological consultant reviewed Ms. McGraw's medical records and assessed the severity of her mental impairments as documented on Form SSA-2506-BK, *Psychiatric Review Technique*.  At the initial level D. Peterson, Ph.D. rated Ms. McGraw's degree of limitation in the four broad functional areas as follows:  *moderate* restriction of activities of daily living, *moderate* difficulties in maintaining social functioning, *moderate* difficulties in maintaining concentration, persistence or pace and *one or two* episodes of decompensation, each of extended duration.  R. at 393.  At the reconsideration level, E. Lessans, Ph.D. rated Ms. McGraw's degree of limitation in the four broad functional areas as follows:  *mild* restriction of activities of daily living, *moderate* difficulties in maintaining social functioning, *moderate* difficulties in maintaining concentration, persistence or pace and *one or two* episodes of decompensation, each of extended duration.  R. at 422.

The ALJ also considered the Dr. Kashyap's consultative psychiatric evaluation.  Dr. Kashyap found "no evidence of limitations in opportunities for [Ms. McGraw] to be independent and initiate activities because of her psychiatric disorder."  R. at 355.  Dr. Kashyap however acknowledged "[t]here is some evidence of impaired attention, concentration and memory that may adversely affect [Ms. McGraw's] performance of ADL[6]."  *Id.*  The paragraph B

---

[6]  Activities of daily living.

criteria are not satisfied and thus Ms. McGraw has not demonstrated that she meets Listing 12.04.

Plaintiff argues she would have met Listing 12.04 if the ALJ had accorded controlling weight to the opinion of her treating therapist and doctor.  The Court now turns to this issue.

B.      *Failure to Accord Controlling Weight to Treating Doctor's Opinion*

On December 18, 2009 Ms. Aboud completed a *Medical Assessment of Mental Status* form.  R. at 426-29.  Dr. Elias Shaya endorsed the completed form by signing it.  R. at 428-29. Ms. Aboud indicated which signs or symptoms of depressive syndrome were present as to Ms. McGraw.  Those signs or symptoms are: anhedonia ("episodes of disinterest in son's activities – lack of motivation/desire to participate"); sleep disturbance ("problems falling and staying asleep"); decreased energy ("Fluctuating energy levels – sometimes excessive cleaning – other times no motivation"); feelings of guilt or worthlessness ("Frequent boughs of feeling she is not being a good mother – episodes of guilt when she is irritable, lack of patience, 'snappy' with son"); difficulty concentrating or thinking ("Problems staying on task, feelings of being overwhelmed").  R. at 426-27.  Concerning signs or symptoms of manic syndrome, Ms. Aboud identified two:  pressure of speech ("Speaks very fast at times") and easy distractability ("Difficulty focusing – episodes of irritability").  R. at 427.[7]  Based on these characteristics, Ms. Aboud opined Ms. McGraw has marked restriction in activities of daily living because "[a]t times she is not able to manage the household.  Fluctuation between lack of energy and excessive energy."  *Id.*  Ms. Aboud further opined Ms. McGraw has marked limitations in concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner based on

---

[7]  The Court notes, for the record, the ALJ accepted these signs and symptoms as determined by Ms. Aboud.  *See* R. at 15.

"Ms. McGraw has had episodes of canceling school functions ([at] son's school) that she had

committed to."  R. at 428.

Plaintiff asserts Ms. Aboud's opinion, endorsed by Dr. Shaya, should have been given

controlling weight in light of the length of the doctor-patient relationship, the nature and

extent of treatment, evidence supporting Ms. Aboud's opinion, the consistency of Ms. Aboud's

opinion and Ms. Aboud's opinion is endorsed by a practitioner specializing in psychiatry.  If

controlling weight had been accorded to Ms. Aboud's opinion, Ms. McGraw would have met

Listing 12.04.

In the decision the ALJ evaluates Ms. Aboud's opinion.

> On December 18, 2009 a Medical Assessment of Mental Status
> was completed by the claimant's treating therapist, Kandy Aboud,
> MSN, CRNP.   It was additionally signed by her treating
> psychiatrist, Elias K. Shaya, M.D.  In it, Ms. Aboud offered her
> opinion regarding the paragraph B criteria.  Ms. Aboud opined the
> claimant has marked restriction of activities of daily living and
> marked deficiencies of concentration, persistence or pace.   I
> reject these opinions as they are inconsistent with the record as a
> whole and with the claimant's own statements, as mentioned
> above.  Ms. Aboud supports these opinions by stating that "at
> times" the claimant is not able to manage the household and she
> has had "episodes" of canceling school functions that she had
> committed to.   These two examples are hardly illustrative of
> marked restrictions.    Additionally, these opinions are not
> consistent with Ms. Aboud's progress notes for the claimant.  The
> claimant completed a Patient Health Questionnaire with each visit
> from October 10, 2008 to December 14, 2009.  The Questionnaire
> lists symptoms of depressive syndrome, such as "little interest or
> pleasure in doing things" and "poor appetite or overeating."  The
> claimant then scores each of the 9 symptoms as follows:  not at
> all; several days; more than half the days; or nearly every day.
> With 12 Questionnaires contained in the claimant's medical
> record, that leaves 108 symptom ratings over the course of 14
> months.  Only 9 times was a symptom marked as "more than half
> the days" and only 12 times was a symptom marked "nearly every
> day."   In sharp contrast, the claimant marked "not at all" on 62

occasions and "several days" on 25 occasions.  The claimant[']s own ratings of her symptoms over the course of her therapy with Ms. Aboud are in direct conflict with Ms. Aboud's opinion that the claimant suffers from marked limitations in two of the paragraph B criteria.

R. at 13-14.

The Court has reviewed Ms. Aboud's progress notes and the Questionnaires completed by Ms. McGraw.  As noted by the ALJ, on twelve (12) occasions Ms. McGraw indicated she experienced certain problems "nearly every day."  On January 12, 2009 Ms. McGraw rated four of the nine problems as "nearly every day."  R. at 451.  She also indicated four additional problems she experienced "more than half the days."  Ms. McGraw did not experience at all one problem.  *Id.*  The accompanying progress notes indicate Ms. McGraw feels worse with the increase dosage of Effexor[8], exemplified by problems sleeping, irritable, flat emotions.  Ms. Aboud decided to reduce the dosage of Effexor from 150 mg to 75 mg.  R. at 450.  At the next session, February 9, 2009, Ms. McGraw did not indicate any of the nine problems were experienced "nearly every day."  She noted two of the nine problems she experienced "more than half the days."  Three other problems she experienced "several days" and the remaining four she did not experience at all.  R. at 449.  The accompanying progress notes indicate Ms. McGraw "[f]eels much better overall."  R. at 448.  Ms. Aboud decided to discontinue prescribing Effexor.  As of April 6, 2009 Ms. McGraw reported one problem which she experienced "several days."  The remaining eight problems she did not experience at all.  R. at 444.  The accompanying progress notes indicate Ms. McGraw reported reduced mood swings and less irritability.  Ms. McGraw expressed her desire to become pregnant.  R. at 443.

---

[8] "[I]ndicated for the treatment of major depressive order."  *Physicians' Desk Reference* 3021 (66th ed. 2012).

By the next session, May 18, 2009, Ms. McGraw reported two problems that she experienced "nearly every day":  trouble falling or staying asleep, or sleeping too much and feeling tired or having little energy.  The remaining seven problems Ms. McGraw indicated she did not experience at all.  R. at 442.  At the June 15, 2009 session Ms. McGraw disclosed that she is 5 ½ weeks pregnant.  She reported feeling happy about the pregnancy, but also noted her inability to sleep and feeling more depressed.  R. at 439.  On the Questionnaire Ms. McGraw reported one problem she experienced "nearly every day" — trouble falling or staying asleep, or sleeping too much.  Ms. McGraw indicated three problems which she experienced for "several days" — little interest or pleasure in doing things, feeling down, depressed or hopeless and feeling tired or having little energy.  R. at 440.  The remaining five problems Ms. McGraw reported not experiencing at all.  *Id.*  In conjunction with the August 2009 visit Ms. McGraw completed a questionnaire, indicating three problems (little interest or pleasure in doing things, feeling down, depressed or hopeless and feeling tired or having little energy) she has experienced for "several days."  The remaining six problems she did not experience at all.  R. at 438.  At the September 21, 2009 visit Ms. McGraw indicated one problem (feeling down, depressed or hopeless) that she experienced for "several days."  The remaining eight problems she did not experience at all.  R. at 436.  By the November 2, 2009 visit Ms. McGraw indicated five problems that she has experienced for "several days" and four problems she has not experienced at all.  R. at 434.  At the last visit, December 14, 2009, Ms. McGraw indicated that seven of the problems she has not experienced at all.  However, there are two problems she has experienced "nearly every day" — trouble falling or staying asleep, or sleeping too much and feeling tired or having little energy."  R. at 431.  The accompanying progress notes provide

insight into Ms. McGraw's condition.  "Poor sleep/feels tired, uncomfortable, anticipates being sad not being able to see son Bryan while hospitalized.  Not motivated lately – feels it's due to pregnancy."   R. at 430.   Ms. McGraw was 33 weeks pregnant on December 14, 2009. Substantial evidence supports the ALJ's evaluation of Ms. Aboud's opinion as to the paragraph B criteria.

C.      *RFC Determination and Findings at Steps Four and Five*

Plaintiff argues the ALJ's determination of Ms. McGraw's residual functional capacity is not supported by the evidence.  The Court disagrees.  The ALJ thoroughly considered the evidence of record concerning Ms. McGraw's mental impairment.  *See* R. at 14-16.  Plaintiff does not challenge the ALJ's determination as to Ms. McGraw's exertional level.  Substantial evidence supports the ALJ's RFC determination.

With regard to step four Plaintiff claims Ms. McGraw's past relevant work, "stockperson in a department store" does not exist.  Plaintiff further notes the VE did not identify such a position by the Dictionary of Occupational Titles ("D.O.T.") code.

As Plaintiff concedes in her brief, "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work."  *SSR 82-62*[9], 1982 WL 31386 at *3.   Social Security Ruling 82-61 lists three possible tests for determining whether a claimant retains the residual functional capacity to perform her past relevant work.  The second test is

---

[9] Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, In General.

> Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.
>
> Under this test, where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be "not disabled."

*SSR 82-61*[10], 1982 WL 31387 at *1-2.  The ALJ, based on the VE's testimony, found Ms. McGraw can perform her past relevant work as a stockperson in a department store as she actually performed it and as it is generally performed.  R. at 16.  Although Plaintiff claims there are no D.O.T. positions as described by Ms. McGraw and supposedly confirmed by the VE, the Commissioner identified the specific D.O.T. code (299.667-014 Stock Checker, Apparel) which appears consistent with the VE's testimony to include the exertional demand of light work, reasoning of level 2, and math of level 1.  Mem. Law Supp. Def.'s Mot. Summ. J., Ex. 4.

Finally, with regard to the ALJ's alternative finding at step five, the VE identified the specific D.O.T. codes for other jobs (dietary aide and hand packer) a hypothetical individual similar to Ms. McGraw could perform.  R. at 56.  When the VE identified the position of dietary aide, the ALJ took pains to ensure that position complied with Ms. McGraw's RFC.

> A:      Okay.  Given those restrictions, she would be able to do work as a dietary aide.
>
> Q:      Wait, before we go on there.
>
> A:      Yeah.
>
> Q:      She has problems with dyslexia and reading.
>
> A:      Yes.

---

[10]  Titles II and XVI: Past Relevant Work - - The Particular Job or the Occupation as Generally Performed.

Q:      Dietary aide, would that involve a lot of reading?

A:      No.

Q:      No.  Okay.  I just wanted to know.

A:      No.

Q:      Okay, good enough.

A:      That's fine.  No, I – – the dietary aide is the person who, in
a hospital, puts things on the trays and delivers the trays.

Q:      Ah, got it, got it.

A:      That's what it is.  It's not a dietician or anything like that.

R. at 55.

5. **Conclusion**.

Substantial evidence supports the decision that Ms. McGraw is not disabled.

Accordingly, the Defendant's Motion for Summary Judgment will be granted and Plaintiff's

Motion for Summary Judgment will be denied.

Date: <u>December 23, 2011</u>            _____/s/_____
                                           WILLIAM CONNELLY
                                           UNITED STATES MAGISTRATE JUDGE